UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| SHERWIN WILKES | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 1:22-cv-00470-HAB |
| | ) |
| FAURECIA EMISSIONS CONTROL | ) |
| TECHNOLOGIES USA, LLC, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff, Sherwin Wilkes ("Wilkes"), worked for Defendant, Faurecia Emissions Control Technologies USA, LLC ("Faurecia"), for about two years before his termination. He then sued Faurecia for race and sex discrimination under Title VII of the Civil Rights Act of 1964. (ECF No. 7). Faurecia counters with its own explanation for Wilkes's termination—repeated violations of its company policy. (ECF No. 42). Presently before the Court is Faurecia's Motion for Summary Judgment. (ECF No. 40). The motion has been fully briefed (ECF Nos. 42, 50, 56) and is ripe for ruling. Because there is little, if any, evidence of discrimination, but ample evidence that Wilkes violated Faurecia's policy five times in two years, Faurecia's Motion for Summary Judgment (ECF No. 40) will be GRANTED.

    **I.**    **Factual Background**[1]

---

[1] Wilkes' Response to Faurecia's Statement of Material Fact did not dispute any of the facts that Faurecia asserted. This Court's local rules require "a citation to evidence supporting each dispute of fact." *See* N.D. Ind. L.R. 56-1. Having left them undisputed, those facts are thus deemed admitted. *See Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010); *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 393 (7th Cir. 2009) ("In accordance with a local rule, the district court justifiably deemed the factual assertions in BP's Rule 56.1(a) Statement in support of its motion for summary judgment admitted because Rao did not respond to the statement."); *Jankovich v. Exelon Corp.,* 2003 WL 260714, at *5 (N.D. Ill. 2003) (explaining that "evasive and unsupported" denials under a similar local rule are deemed admitted for purposes of summary judgment); *see also Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994) (noting that the Seventh Circuit has routinely sustained "the entry of summary judgment when the non-movant

Faurecia is a global manufacturer of automobile parts with a facility located in Fort Wayne, IN. (ECF No. 41, ¶¶ 1-2). In June 2019, it hired Wilkes, an African American man, as an Operator in its Fort Wayne facility. (*Id.* ¶ 3). Faurecia maintained policies and procedures that Wilkes was expected to abide by during his employment. (*Id.* ¶¶ 6-9). And, at the outset of his employment, Wilkes signed a written acknowledgment that he read and understood the contents of Faurecia's handbook. (ECF No. 41-6). Wilkes violated those policies five times from 2019 to 2021. (ECF No. 41, ¶¶ 20, 23, 26, 28, 37).

On August 30, 2019, Wilkes received his first Disciplinary Action Report from Faurecia. (*Id.* ¶ 20). According to the company handbook, an employee violates Faurecia Company Rule 17 if they "return[] late from to work late from break periods." (ECF No. 41-7 at 13). The report notes that Wilkes violated Company Rule 17 and was issued a written warning for untimeliness. (ECF No. 41-8).

Wilkes received his second Disciplinary Action Report on October 25, 2019, for violating Company Rule 13, which fell under the label "Most Serious Work Rules" in the handbook. (ECF No. 41-9). An employee violates Company Rule 13 when they engage in "insubordination" which "include[s] [the] refusal to carry out duties as assigned by the line person or Supervisor" and "disrespectful and abusive language or conduct to a supervisor." (ECF No. 41-7 at 12). Wilkes violated Company Rule 13 by refusing to take out "scrap[,]" an assigned task, when directed to by his supervisor. (ECF No. 41-9). A violation of Faurecia's "Most Serious Work Rules" constitutes

---

has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts"); *Hummel v. St. Joseph Cty. Bd. of Comm'rs*, 817 F.3d 1010, 1017 (7th Cir. 2016) ("How strictly to apply a local rule is left to the district court's sound discretion.").

a terminable offense. (ECF No. 41-7 at 12). After about a year of good behavior following this Report, Wilkes became a welder for Faurecia. (ECF No. 41, ¶ 16).

On May 19, 2021, Wilkes received his third Disciplinary Action Report. (ECF No. 41-10). Company Rule 17 also prohibits "[w]asting time, including stopping production prior to the end of a work period[.]" (ECF No. 41-7 at 13). This time, Wilkes again violated Company Rule 17 for stopping production by arguing with his supervisor about the allocation of labor. (*Id.*). The Report notes that he also violated Company Rule 30, a catch-all rule that holds employees accountable for "violation[s] of any other Company Policy or generally accepted standards of care." (ECF No. 41-7 at 13).

On August 30, 2021, Wilkes received his fourth Disciplinary Action Report for violating Company Rules 12 and 13. (ECF No. 41-11). As for his violation of Company Rule 13, Wilkes refused to work on a certain product line multiple times after being directed to by a supervisor. (*Id.*). It was only once Faurecia's Union Steward, Dan Broadnax ("Broadnax"), directed Wilkes to go to the product line that he complied. (*Id.*). As for Company Rule 12, another of Faurecia's "Most Serious Work Rules[,]" it is a violation to intentionally interfere or to withhold services. (ECF No. 41-7 at 12). Wilkes violated this rule when he "took an extended bathroom break, used his cell phone, and only welded 15 parts in 2.5 hours[,]" well below the expected pace of 127 assemblies in 2.5 hours. (ECF No. 41-11). This was Wilkes' final written warning and the report noted that the "[c]onsequence for…further disciplinary action" was "[t]ermination[.]" (*Id.*).

About a week later, Wilkes received his final Disciplinary Action Report. (ECF No. 41-12). He violated Company Rule 17 by showing up late for his shift because he forgot his Personal Protective Equipment ("PPE"). (ECF No. 41, ¶¶ 40-45). And Wilkes admitted that he was late during his deposition. (*Id.* ¶ 41). Because Wilkes violated company rules while on a final written

3

warning, Angela Bowling ("Bowling"), Faurecia's Human Resources Business Partner, decided to terminate Wilkes.[2] (*Id.* ¶¶ 49-51).

Wilkes then sued Faurecia alleging race and gender discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"). (ECF No. 7).

## II.     Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[I]n order to withstand summary judgment, the nonmovant must allege *specific* facts creating a genuine issue for trial and may not rely on vague, conclusory allegations." *Gabrielle M. v. Park Forest-Chicago Heights., Ill. Sch. Dist. 163*, 315 F.3d 817, 822 (7th Cir. 2003). Still, a court must view the evidence in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650 (2014).

The Court's role is not to weigh the evidence or evaluate the credibility of the witnesses. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). But the "non-movant does not satisfy its burden merely by pointing to self-serving allegations that otherwise are without evidentiary support." *Cliff v. Bd. of Sch. Comm'rs*, 42 F.3d 403, 408 (7th Cir. 1994). Indeed, "summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005), *cert. denied*, 546 U.S. 1033 (2005) (quotations omitted).

## III.    Discussion

---

[2] Bowling is an African American woman. (ECF No. 41, ¶¶ 52-53)

Title VII forbids an employer from discriminating against any individual with respect to their "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Wilkes claims he was terminated because he is an African American and male—two protected classes under Title VII. Faurecia claims he was terminated for repeatedly violating company rules. In the end, only Faurecia's narrative is supported by the evidence as Wilkes' evidence is backed by only self-serving affidavits and statements with little to no evidentiary support. Thus, Wilkes fails to meet his summary judgment burden to raise an issue of fact as to discrimination.

Discrimination claims may be reviewed on summary judgment under the direct or the burden-shifting methodologies. *See David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017). When a plaintiff responds to a motion for summary judgment on an intentional discrimination claim by relying on the burden-shifting framework created by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a court should assess the case in those terms. *Id.*; *see also Ferrill v. Oak-Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 499 (7th Cir. 2017) (noting that *McDonnell Douglas* burden-shifting analysis has not been displaced). However the plaintiff chooses to proceed at the summary judgment stage, the Court must consider all the evidence together to determine whether a reasonable jury could "conclude that the plaintiff's…[race] caused the discharge." *See Ortiz v. Werner Enterprises, Inc.*, 834 F.3d. 760, 765 (7th Cir. 2016).

Wilkes has only invoked the burden-shifting framework in his Response. (ECF No. 50). Under that burden-shifting approach, the plaintiff must come forward with evidence that (1) he is a member of a protected class, (2) he was meeting the defendant's legitimate expectations, (3) he suffered an adverse employment action, and (4) similarly situated employees who were not

5

members of his protected class were treated more favorably. *Simpson v. Franciscan All., Inc.*, 827 F.3d 656, 661 (7th Cir. 2016). If the plaintiff has established this prima facie case, the burden shifts "to the defendant to 'articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual.'" *Id.* (citation omitted).

Faurecia asserts that Wilkes cannot meet his prima facie burden under *McDonnell Douglas*. True enough, Wilkes is a member of two protected classes and suffered an adverse employment action through his termination. Faurecia does not contest as much. Instead, it challenges the second and fourth elements of the burden-shifting test.

Starting with Faurecia's legitimate performance expectations, Faurecia contends that Wilkes was terminated for falling short of just that. It is undisputed that in two years, Wilkes violated Faurecia's Company Rules on five different occasions. He received his first two written warnings in 2019. (ECF No. 41-8, 41-9). One of these violations was terminable on the first offense with Wilkes understanding that Faurecia has a zero-tolerance approach for its "Most Serious Work Rules[.]"[3] (ECF No. 41, ¶ 12). In 2021, Wilkes then violated Company Rules three more times— all within a four-month period. (ECF Nos. 41-10, 41-11, 41-12). Progressively, he received a written warning in May and final written warning in August. Notably, his August violation was also a terminable offense. When he violated Company Rules again just weeks after the final written warning, Bowling terminated Wilkes.

In response, Wilkes argues:

He did meet Faurecia's legitimate performance expectations. In his short two-year period with Faurecia, he received a pay raise in his salary.

---

[3] Wilkes states in his "Statement of Material [Facts] In Dispute" that Faurecia "had a rolling calendar disciplinary system, for each day forward, a day fell off the back end." (ECF No 55, ¶ 92). Yet he does not support that assertion with a citation to evidence and, in any event, he does not mention such a policy anywhere in his brief. (*Id.*; ECF No. 50).

> Wilkes can establish that he performed according to Faurecia's legitimate performance expectation. For these reasons, Mr. Wilkes' discrimination claims must not fail. He has established a prima facie case.

(ECF No. 50 at 3). That's all. Wilkes does not so much as reference any of his violations of Company Rules while arguing he was performing as expected. Nor does he cite any evidence in support of his salary increase. As the Seventh Circuit said earlier this month, "[s]ound briefing matters." *United States v. Clark*, ___ F.4th___, 2025 WL 1063106 (7th Cir. Apr. 9, 2025).

But even entertaining Wilkes' perfunctory and unsupported argument regarding his salary increase[4], it is not evidence of compliance with Faurecia's expectations. "[W]hen a district court evaluates the question of whether an employee was meeting an employer's legitimate employment expectations, the issue is not the employee's past performance but whether the employee was performing well at the time of [his] termination." *Peele v. Country Mut. Ins.*, 288 F.3d 319, 329 (7th Cir. 2002). First, Wilkes' pay increase occurred on June 1, 2021—before his final two violations. It does little to rebut his alleged poor performance at the time of his termination. Second, Wilkes' pay increase was not merit-based. His pay increase was negotiated by his Union through a collective bargaining agreement and broadly applied to all Union members. (ECF No. 54-1, ¶¶ 4-5). The pay increase is thus not reflective of Wilkes' performance at all. That said, Wilkes' case fails on this element.

---

[4] "'[W]hen a plaintiff makes only a perfunctory argument and fails to cite any record evidence in support of a claim, summary judgment should be granted.'" *See Packer v. Trustees of Indiana Univ. Sch. of Medicine,* 800 F.3d 843, 852 (7th Cir. 2015) (finding cursory defense of a claim on summary judgment resulted in waiver); *Davis v. Carter*, 452 F.3d 686, 691-92 (7th Cir. 2006) (perfunctory and undeveloped arguments without proper cites to the record are deemed waived); *Ienco v. Angarone*, 429 F.3d 680, 685 (7th Cir. 2005) (finding plaintiff waived claims by failing to develop them in response to defendant's motion for summary judgment); *E.E.O.C. v. U.S. Bell*, 2005 WL 1683979, at *19 (N.D. Ind. 2005) (issues raised in the motion for summary judgment that are not properly responded to by the nonmoving party are deemed waived)." *Jones v. LaPorte Cnty. Sheriff's Dep't*, 2016 WL 1254367, at *22 (N.D. Ind. Mar. 29, 2016). By failing to cite to any evidence and only making conclusory assertions, Wilkes has waived this argument.

Nor has Wilkes identified any similarly situated employees who were not members of his protected classes that were treated more favorably. To get ahead of Wilkes' response, Faurecia supplied evidence that Bowling terminated members outside of his protected classes—four non-African American and two female employees. Wilkes points out that only one of those comparators was a welder. That may be true as far as it goes. But it is Wilkes burden to produce evidence of relevant comparators who were treated more favorably; not Faurecia's burden to provide those treated the same. *See Simpson*, 827 F.3d at 661. Rather than doing so, he argues that there were no similarly situated employees at Faurecia. That does not meet Wilkes' burden nor is it evidence of discrimination. And he—in conclusory fashion—states that "the reason for [Wilkes'] termination" is that he was "Afro American[.]" (ECF No. 50 at 3). He does not so much as mention gender. To the extent his race claim has any merit, the one comparator Wilkes failed to distinguish easily counters that argument. He was a non-African American welder who Bowling terminated for similar reasons. Wilkes' case thus fails on this element as well.

Even if Wilkes established his prima facie showing (he did not), he fails to demonstrate pretext. Pretext "means a lie, specifically a phony reason for some action." *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995). "The only concern in reviewing an employer's reasons for termination is the honesty of the employer's beliefs." *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 419 (7th Cir. 2006). "The analysis of pretext focuses only on what the decisionmaker, and not anyone else, sincerely believed." *Little v. Ill. Dep't of Revenue*, 369 F.3d 1007, 1015 (7th Cir. 2004).

The decisionmaker here was Bowling who offers Wilkes' repeated violations as the reason for his termination. In response, Wilkes only addresses his final violation for timeliness. He argues that "he was in the building, and in the process of retrieving his safety equipment to commence

8

USDC IN/ND case 1:22-cv-00470-HAB   document 58   filed 04/17/25   page 9 of 10

work as a welder[.]" (ECF No. 50 at 4). But what Wilkes cannot say is that he was on time. Indeed, he admitted to being late in his deposition. He thus violated Company Rule 17, at least in Faurecia's eyes. Wilkes also notes that Broadnax tried to intercede during his termination but was denied. But that does not render Bowling's reason pretextual because Wilkes still violated Faurecia's Company Rules. And to the extent Wilkes alleges that Bowling had a "hit list" for African American employees, the sole evidence of this appears in Broadnax's Affidavit. (ECF No. 51-2). Broadnax's Affidavit states, regarding the hit list, "[m]y knowledge was obtained from [Bowling's] decisions as to discipline and termination practices." (*Id.* ¶ 13). The existence of a "hit list" is pure speculation. Broadnax has no personal knowledge of any "hit list" and, moreover, Bowling is an African American. "There can be no compelling inference of discrimination when the decision-maker is in the same protected category as the plaintiff." *Southall v. AVI Food Sys., Inc.*, 2022 WL 3579804, at *6 (N.D. Ind. July 27, 2022)*, report and recommendation adopted,* 2022 WL 3579399 (N.D. Ind. Aug. 19, 2022). There is simply no evidence of pretext here. Finally, Wilkes offers no evidence at all of discrimination based on sex and the Court is not inclined to create a claim out of a record lacking any evidentiary support.

In sum, the critical question at summary judgment is whether the plaintiff has produced enough evidence to permit a reasonable factfinder to conclude that the plaintiff's race or other proscribed factor caused the adverse employment action. *See Purtue v. Wis. Dep't of Corr.*, 963 F.3d 598, 602 (7th Cir. 2020) (quoting *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018)). The answer to that question is easy, Wilkes has not met his burden with the showing presented here. Summary judgment should thus be granted in Faurecia's favor on both his race and gender discrimination claims under Title VII.

**IV.    Conclusion**

9

For these reasons, Defendant's Motion for Summary Judgment (ECF No. 40) is GRANTED. Summary judgment is GRANTED in favor of Defendant and against Plaintiff as to all claims asserted in Plaintiff's Complaint (ECF No. 7). The CLERK is DIRECTED to enter judgment in favor of Defendant.

SO ORDERED on April 17, 2025.

                                                s/ *Holly A. Brady*
                                                CHIEF JUDGE HOLLY A. BRADY
                                                UNITED STATES DISTRICT COURT